E. L. STEVENS v. WICHITA VALLEY RAILWAY COMPANY ET AL.

Decided February 2, 1907.

**1.—Round Trip Ticket—Time Limit.**

It is the duty of a railroad company issuing a round trip ticket with a time limit over its own and the line of a connecting carrier, to honor such ticket on return passage even after the expiration of the time limit when the failure of the passenger to be within the time limit was caused by the failure of the connecting carrier to make connection with the initial carrier's train; and this, though the passenger, after missing connection, could have taken a train on the initial carrier's road that would have carried him a part but not the entire distance to his home, and so been within the time limit a part of the way.

**2.—Practice—Cross-Assignment of Error.**

In the absence of a cross-assignment of error an appellee can not urge error of the trial court in overruling its motion for change of venue as an answer to appellant's assignments of error.

Appeal from the District Court of Baylor County. Tried below before Hon. J. M. Morgan.

*Holman & Dickson,* for appellant.—The contract and ticket of the F. W. & D. C. Co. required them to carry Mrs. Stevens from Fort Worth to Seymour on 23d May, and leaving her at any point on the road short of Seymour was as much a breach of the contract as to leave her at Fort Worth. Hill v. Tucker, 1 W. & W., sec. 1225.

The time limit for return fixed by the selling company is a representation that it is reasonable, and if, in fact, it is not, then such limit is invalid and the purchaser has a right to be returned within a reasonable time without further pay. Gulf, C. & S. F. Ry. v. Wright, 2 Texas Civ. App., 469; Texas P. Ry. Co. v. Dennis, 4 Texas Civ. App., 94.

*Edgar Scurry, D. T. Bomar* and *Spoonts, Thompson & Barwise,* for appellees.

STEPHENS, ASSOCIATE JUSTICE.—The following is appellant's statement of the case, which is accepted as "practically correct" by the appellees:

"E. L. Stevens, plaintiff, brought suit in the District Court of Baylor County, Texas, against the Wichita Valley Railway Company, operating its road from Seymour to Wichita Falls, and the Fort Worth and Denver City Railway Company, operating its road from Wichita Falls to Fort Worth, and the Missouri, Kansas & Texas Railway Company of Texas, operating its road from Fort Worth to Galveston, Texas, on the following facts:

"On 19th May, 1905, the F. W. & D. C. Ry. Co., having sent its blank contract and tickets to L. P. Davidson, agent of the Wichita Valley Railway, at Seymour, Texas, for the occasion of Woodmen of the World at Galveston, advertised for May 21, 1905, the said Davidson sold to E. L. Stevens round trip tickets from Seymour to Galveston and

return, limited to 23d May, 1905, for himself, wife and Miss Croushorn. Davidson issued to them the F. W. & D. C. Ry. coupon tickets from Seymour to Fort Worth and return, and its order on the agent of the M. K. & T. Ry. Co. at Fort Worth to issue tickets to them to Galveston and return, limited to four days from date of issuance, and send the same to its auditor for collection.

"Plaintiff's party took the train at Seymour on 19th May, 1905, delivered the said order to the agent of the M. K. & T. Ry. Co. of Texas at Fort Worth and received its tickets to Galveston. On Monday evening, 22d May, they took the excursion train of the M. K. & T. Ry. back to Fort Worth, but were delayed en route, reaching Fort Worth about 11 a. m., 23d May, after the F. W. & D. C. Ry. train had left for Seymour at 9:45 a. m. There was a night train leaving for Wichita Falls at 8:30 p. m., but it did not connect with the Wichita Valley Railway for Seymour, and would have detained them from 11:00 or 12:00 o'clock at night until the 9:45 F. W. & D. C. train came on next day, making connection for Seymour.

"They were detained at Fort Worth until 9:45 24th May. Plaintiff's wife and Miss Croushorn took that train for Seymour. Soon thereafter Conductor Murphy called for their tickets and after examining them, in a loud, peremptory and harsh tone told them 'they could not ride on those tickets—they were no good.' On being asked why, he said they were out of date and they must pay fare or get off at Saganaw. Mrs. Stevens then explained to him the misconnection by the M. K. & T. on the 23d or they would have gone on that train, that they were perfect strangers and without money to pay hotel bills at Saganaw or fare back to Fort Worth, and would not know how to find her husband, who had remained over in the city on business. To which he replied 'they must pay their fare or get off at Saganaw,' and went on to the next car. This left the ladies in great embarrassment, humiliation and mental suffering under the gaze of the passengers and expecting to be put off the cars, until after riding near two hours, when near Decatur, Murphy returned, asked to see their tickets, took down their names and said he would see them later. When near Bowie he returned and said he was satisfied they were the original purchasers of these tickets, but they were out of date and they must pay their fare. She told him if he would carry them on to Wichita Falls she could have herself identified and settle her fare. He insisted on payment and forced her to give him her check on First National Bank of Seymour to keep from being put off the cars.

"Plaintiff sues for breach of the contract, for expense in hotel fare by detention at Fort Worth and for mental suffering, embarrassment and humiliation caused his said wife by the conduct of the conductor, characterizing said breach."

The jury returned a verdict in favor of the appellees, doubtless in response to the following charge, to which error is assigned: "If you find that under all the facts and circumstances in evidence before you the time limit made by defendants in the ticket sold to plaintiff's wife was a reasonable one, and if you further find that by the exercise of reasonable diligence, on the part of plaintiff's wife she could have presented her ticket to the conductor of the Fort Worth & Denver City

Ry. Co. within the time limit in said ticket, and could thereby have had first class passage as called for in said ticket, on regular scheduled trains of said company within the time limit named in said ticket, and if you further find that she failed to exercise such reasonable diligence and then by reason of such failure on her part she did not present her ticket to said conductor until after the expiration of the time limit named in said ticket, then she would not be entitled to passage over said road on said ticket, and the conductor would have the right to demand and collect from her fare at the regular legal rates for her passage on said road; and if you so find you will find for the defendant, the Fort Worth & Denver City Ry. Co."

In view of the fact that appellant's wife could have gone to Wichita Falls, but not to her destination within the time limit of her ticket by taking the night train of May 23 on the Fort Worth & Denver City Railway, this charge was misleading. The Fort Worth & Denver City Railway Company was the author of the excursion in question and undertook to return appellant's wife within a given time, not to Wichita Falls merely, but to Seymour, provided of course she would avail herself of the means of transportation offered. In order to do this, however, she was not required to take a train that would not carry her to the end of her journey. It was evidently contemplated by said company in issuing the excursion ticket that the carrier between Fort Worth and Galveston would return to it the passenger in time for the morning train of May 23 from Fort Worth to Seymour, and good faith and fair dealing required of it such extension of the time limit as the delay of such carrier made necessary. That it was not the fault of the passenger that she missed connection at Fort Worth was a fact too easy of ascertainment by the Fort Worth & Denver conductor to warrant him in following the letter of a rule which if intended to be enforced under such circumstances would be palpably unreasonable and void. The company he represented had undertaken to give the excursion and to this end had given the passenger an order on the next connecting carrier for a ticket from Fort Worth to Galveston and return within the same time as that fixed in the original ticket—four days. This conductor under the circumstances was under obligation to treat appellant's wife as a passenger on May 24 and whatever he may have done at variance with that obligation to her detriment was actionable.

Proof of the good behavior of this conductor on other occasions was admitted over appellant's objection, but the ground of objection is not so presented in the bills of exception as to warrant us in sustaining any of the assignments addressed to the admission of this testimony, nor has any authority in point been cited. We therefore decline to discuss the question.

As to the question of venue urged by the appellees as a complete answer to all the assignments of error, it is sufficient to say that this defense was overruled in the trial court and there is no cross assignment here.

Because of the error in the charge, the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*